May it please the Court, I would like to argue for 10 minutes and reserve 5 minutes for rebuttal. Yes, but try to keep track of your own time. Thank you, Your Honor. My name is James Slaughter. I represent Pertrero Hills Landfill and 12 waste haulers and recyclers that are faced with the loss of one of Northern California's largest regional landfills. These companies, in turn, work for hundreds of thousands of individuals and businesses that depend on the plaintiff's ability to cross county and state lines every day with waste and to transport and dispose of that waste efficiently. Solano County Measure E, which is at the heart of this litigation in both the federal and state actions, is a 1984 voter initiative passed by Solano County. It facially discriminates against out-of-county waste and holds it to very severe limits. It discriminates by imposing no limits whatsoever on waste inside of Solano County. To immediately go to the procedural setting of this case, the intervenors in this case, in June 2009, filed three writ of mandamus actions against Solano County. What's the status of the latest writ of mandamus action that the Superior Court, I think, issued the writ? It rewrote the statute and then... That's correct, Your Honor. What's the status of that case? Briefing is now proceeding in the California Court of Appeal. Briefing will be concluded in approximately July of this year. Oral argument has not been set. Is that an appeal or is this a new mandamus action? It's a cross appeal, Your Honor. In the Solano Superior Court, the court, as you said, rewrote Measure E to, in the court's view, to cure the Commerce Clause violation. Yes. And my clients have appealed that to the Court of Appeal. The Solano Superior Court denied the administrative writ of mandamus requested by the intervenors below. The intervenors below in the federal court, the petitioners in the state court... Okay. Nothing's happened with that writ that was issued. It's pending on a direct appeal before the Court of Appeal. That's correct, Your Honor. Under California law, when Solano County appealed the writ of mandamus directed against it to enforce Measure E, then its obligation under the writ of mandamus was automatically stayed, and that's where it stands now. Okay. So as we speak, are any restrictions being imposed in this regard against your client? No, Your Honor, because the case is on appeal. To the extent that that goes to the standing and the injury in fact argument that has been raised as an additional argument for dismissal of the case, we definitely have injury in fact, and that is alleged in our... I didn't mean to lead into that. I just wanted to know whether Measure E is shrunken or writ large is being enforced against your client. You say no, that's fine. Not at this time, Your Honor. As we plan the complaint, the effects of it are already impacting the businesses of the 23, now 13, federal plaintiffs. The central points that I would like to make in oral argument are that three of the four requirements for younger abstention are not met. First and most importantly, there was not a, quote, state-initiated proceeding, unquote, which as Your Honor pointed out in the Amerisource v. Bergen case, has been pointed out in the En Banc Gilbert case, and most recently in the San Jose Chamber of Commerce case, is a requirement before there can be abstention. It must be a proceeding brought by a state or county entity. This private mandamus litigation simply does not qualify under that first requirement for younger abstention. Why wouldn't Pullman abstention work? Pullman abstention is even rarer than younger abstention. It would not apply. The question doesn't ask about whether it's rare or not. Why wouldn't it work? First, there is no sensitive social policy issue. In the Lody case, Fireman's Fund v. Lody case out of the Ninth Circuit, there was a challenge to Lody's hazardous waste remediation ordinance, and the court looked at that and said that while hazardous waste remediation is something that is generically of local concern, it doesn't apply for Pullman concerns as a socially sensitive type of area that the federal courts have to abstain from and allow the state courts to decide. But Pullman abstention is also inappropriate under the other Pullman factors, in that the court here doesn't have any embedded complex state issue. Pullman abstention only applies when there's such a complicated issue of state law that as a matter of discretion, the federal court has to abstain from deciding that complicated issue of state law. Simply one judge's effort to rewrite a very simple facially discriminatory statute to try to address Congress' policy issue is not a complex issue of state law. We think that that was wrongly decided. Which measure do we have before us? Do we have the original Measure E, or do we have it as reformed? The court has before it the original Measure E, which was what we filed against in September 2009, and the district court made its abstention decision in December of 2009 before the Solano court had made its ruling. Let me just follow on on that. Why shouldn't we wait until we know what form of Measure E we have in front of us? Aren't there very different legal considerations if the superior court is correct and had the authority to reform the measure in the way it did as opposed to the way it was originally passed? I think there's no need to wait on several bases. Number one, even as reform, there are serious Commerce Clause issues. Just because the court said that Measure E will only apply to discriminate against waste inside California, that cuts a huge swap of commerce. In the many commerce case decisions made by the federal courts over the years, they've consistently said that waste or other goods within a state can constitute commerce, both for the Positive Commerce Clause and for the Dormant Commerce Clause. More importantly, Judge Hawkins, the court simply can't get to that through either Pullman abstention or Younger abstention. The federal courts are required to exercise the jurisdiction that is given to them. And the fact that the 23 plaintiffs below, a good chunk of the waste hauling industry in Northern California, chose a federal forum, they should not lose that federal forum simply because private activist groups decided to bring private writ of mandamus actions in state court. The implication of the ruling below, if affirmed, will be a real sea change in abstention doctrine, both under Younger and possibly under Pullman as well, in that you'll have the specter of a group bringing a private writ of mandamus and being able to control and deny access to federal courts at any time during that litigation. The other Younger factors... Counsel, Judge Gould, if I could interject a question, please. It's sort of a procedural issue that comes to mind for me in light of Judge Hawkins' questions. And that's this. If we accepted your argument that Younger abstention wasn't properly applied and we thought that decision by the district court was error, could we procedurally, would it be permissible for us to affirm the district court on the grounds that it could have done Pullman abstention, or is that not even a possibility because it's a discretionary doctrine on which the district court didn't make a ruling? You're correct, Judge Gould. That is another reason why Pullman abstention would not be appropriate here because... Well, it might not be appropriate, but the question is, then would we be required to remand to allow the district court to consider that issue? I think it's too late for Pullman abstention because under Pullman abstention, typically the federal claim will be reserved for later consideration by the federal court, while the state court continues with the state provision. And the state court is barred from deciding that federal claim. It's held in abeyance in the federal court. We would have had an opportunity to make an England versus Louisiana board reservation of the federal claim before the state court decided the state court issues. But here, because it was younger abstention, we had no choice but to litigate the entire case in state court on both federal and state grants. I'm already into my rebuttal time. I would simply add at this point that... Well, I'd like to know, you said you had four reasons why Pullman would not apply. Could you briefly tell us, you've gotten to two. We'll give you time for a bottle book to briefly give us the other two. Thank you. There are four requirements for younger abstention. Three of them are not... Were you on younger or Pullman when you said four? Is that younger? Younger. Okay. Three of them are not met here. The state-initiated proceeding, which we've talked about, and which I believe the Woodfeathers case, which Judge Hawkins was on the panel there and was relied upon below as a great example of it, you had a county actually enforcing, through a civil action, its solid waste law. Here we have private parties. Okay. Just summarize the... All right. The other criteria is that there's not an important state interest at stake. The state interest for younger abstention is not a generic subject like the importance of local waste. But here, under the intervener's theory, it's the right of private parties to bring a writ of mandamus action. The last factor that is not satisfied for younger abstention is whether our federal action would enjoin or practically stop the state court action. It wouldn't at all. As Judge Hawkins recognized in the Amerisource Bergen, you can have parallel federal and state actions about the same issue. And that's all that we ask be happening here. We don't seek to enjoin anything with the writ of mandamus proceedings, and that's the kind of practical injunctive effect that you have to have as a requirement for younger abstention. Thank you. Thank you. May it please the Court. Good morning. My name is Robert Perlmutter, and I'll be arguing on behalf of Intervener Sierra Club. I'll also be arguing on behalf of Northern California Recycling Association, which has ceded its time to me. Does that mean you're taking the entire 15 minutes? No. What the interveners have agreed to is that I would have 10 minutes, and Mr. Smith for Intervener Sprawl Deaf would have five minutes. I learned this morning that although the county expressly joined in the plaintiff's opposition to our motion dismissed below and supports the request for reversal today, it nonetheless believes it's on our side for the purposes of oral argument. We disagree with that and think the county should take its time from the plaintiff to support them. And we'd like to divide the time just amongst the interveners who oppose, who are actually opposed. So you're going for 10 and he's taking five? I'd like to go down for five with the Court's permission. And the county is here and wants to speak in this case? That's correct, Your Honor. We're appellees in this case. We'd like the opportunity to speak. Do you have any view of this? Okay, let's go to 10. We'll give you three minutes that won't come out of this side or the other. You're just a friend of the Court. Or an enemy of the Court. This case would certainly make an interesting first year of constitutional law. That's just what you're talking about. Like a great federal fed court's final exam question. That was my point exactly, but it certainly does not belong in federal court. The whole purpose of appellant suit is to stop the state court from ordering the county to enforce Measure 8. There's no dispute about that. And that's exactly what Younger is designed to prevent. Appellant's main argument is that the district court erred because Younger allegedly only applies to state-initiated actions. But that's simply not true. I think the Supreme Court's decision in the Pennzoil case is a good illustration. The Court there held that Younger mandated abstention in deference to a state court tort action between two private oil companies. And the Court emphasized the two of the traditional factors for Younger, both of which are present here. The first is whether the state's interest in the state proceedings is so important that exercising federal judicial intervention would undermine comedy. That's owed to the states. And although the state of Texas was not a party to either the state or the federal proceeding and didn't assert any interest, the Supreme Court nonetheless held that Texas had an important interest in vindicating the ability of its state courts to enforce their own judgments, even though the state wasn't a party to the suit and did not initiate any litigation. Let me just ask you about what bothers me here. The state and the county have both filed amicus briefs opposing abstention. Is that correct? That's correct. The county's actually a party, but the state filed an amicus brief, yes. And if the state and the county believe it's in their interests to have the federal court decide this rather than the state court, are we supposed to say, no, it's in the state's interest to have the state court decide it? I think you are on the very peculiar facts of this case. There's no case that's ever – this really goes to the waiver issue. And no case has ever held that where a state party or non-party purports to waive Younger abstention, that the court must hear it. And that's because in the typical case, the state's acquiescence in the jurisdiction is because it wants a prompt and speedy resolution in the federal forum, and there are no issues with the county. That's not the case here, because what the county really wants, along with the plaintiffs, is to reach into state court and to review the state court's decision in this case and basically take the power away from the state case. You mean the state court mandamus decision? Yes, exactly. But wasn't this filed before that happened? No, this action was filed first, Your Honor. After the state court decision? Oh, I'm sorry. No, the state court proceedings were filed first. All three of the state court mandamus proceedings were filed first, a month after the last was filed, then this federal action was filed. Including the state court decision that's now on appeal? That – the writs of mandamus action resulting in a state court decision that's now on appeal were filed first. Those are the first filed actions. When did the result in trial court happen? We got a ruling from the court in May of last year, but not a final judgment after briefing in this case in December. And when was this case filed? This case was filed in September of 2009, three months after the state actions. I don't hear Petraeo Hills saying that they want us to decide the reformed Measure E. Do you? Yes, Your Honor. Let me slightly rephrase that. There's only one Measure E. The final meaning of Measure E is uncertain at this time because under state law, canons of statutory construction, there's not a final after appeal judgment as to what it means. We believe it means exactly what the state court held. And although the doctrine it applied under state law is reformation, we believe it's clear on its face because of the findings and the legislative history that the voters of Solano County only intended to apply this measure within the state of California. Because, in fact, that's the only thing it's ever applied to. But there's only one Measure E. Its meaning right now is uncertain because either the state court, we hope, which is in the process of resolving this issue, or ultimately a federal court if the court rules against us. That sounds like Pullman, not Younger. I think it's both. Pullman, let me be clear. Pullman, and I do want to talk about the Article III issues because I think they're also dispositive. If we get to Pullman that far, clearly Pullman abstention is appropriate. I think the main three issues are covered in our briefs. There's an uncertainty about what Measure E means. If it means what the state court says it means, then the per se constitutional invalidity, which has been the entire focus of all the briefing in both cases, is out the window. It simply is a matter of Ninth Circuit and U.S. Supreme Court law. It doesn't implicate out-of-state waste. And so the only issue under Pullman is the issue raised for the first time in the reply brief, the England reservation issue. Counsel, if I could interject my question. Same question I asked your colleague on the other side. Can we really get to Pullman? That is, do we have authority, another federal court's question I guess, to affirm the district court's younger abstention on the grounds that we think it could have done Pullman abstention when it didn't? Or would we just have to use a kind of procedure like Judge Reinhart said, that we could remand and tell the district court that's still open, it could do what it wants. And then we would review that. So this would be like Jarndyce v. Jarndyce, I guess. Yes, Your Honor. You know, I was looking at our briefs when you asked that question to counsel. And I don't know that there's a case right on point that specifically answers that. It wasn't brief. But I do know that looking at the standard of review that applies, it seems to me it makes sense that this court would be able to. It's a modified, quote-unquote, modified abuse of discretion standard. It's in footnote 11 of our brief. The legal question of whether the younger, I mean, I'm sorry, the Pullman factors are met. You can normally affirm on any ground. Exactly. But I think what Judge Gould's question really relates to is where it's discretionary. And you could either affirm or reverse. Isn't that discretion, shouldn't that first be exercised by the district court? And therefore, shouldn't we, rather than affirming or reversing, if we believe that Pullman applies, reverse it then and send it back to the district court to ask what it wants to do in its discretion? And I understand that's the question. And just two points of response. One is that I think there is a legal question as to whether or not the three Pullman factors are met. And I think that this court can, it's de novo review. You can decide now. The question of whether or not given they're met, it would have been an abuse of discretion not to abstain. I also think the court is within your authority. Well, not an abuse of discretion. Exercise discretion for the first time to decide that question. For the first time, or would we be able to say for the first time, yes, Pullman applies and we want to exercise our discretion? And I think, and again, I don't have a case on point, but I think the answer is that in your view under, this is a motion to dismiss, so all of the facts that are going to get in are as alleged. It would be, there's no conceivable exercise of discretion not to remand, I mean not to dismiss, not to abstain, I should say, under Pullman, then this court would have the power to do that. I don't have a case on point. It seems to me it makes sense, but I don't have a case on point for that. Well, this brings me back to what we were, I was asking, I think maybe others have been asking. If Pullman, if in a Pullman case the state and the county both want us to continue with the case rather than to protect the state's interest by having it go back to the state court and outside parties would like to send it back, but the state says that that's not what we want to protect our interest, then is that satisfying the purpose of Pullman to say it's got to go back regardless of what the state thinks its interest is? And the answer is yes, Your Honor. There's two cases right on point, a Supreme Court case and a Ninth Circuit case. The Ninth Circuit case is the Sam Remo decision where San Francisco opposed Pullman abstention and the defendant actually in the state court action wanted it. And the Ninth Circuit said we understand why the state may oppose it, but nonetheless we don't care what the state has. It's for us to decide whether or not because of the important policy implications at stake it should go back. And they say ordered abstention under Pullman. And the Supreme Court case I believe is a Dayton case. It's one of the two Supreme Court cases involving an Ohio state agency. Same thing, the Supreme Court said it doesn't matter what the parties have said. This is not about the parties. It's about the courts and the important policies that we owe to the states in our system of government. Okay. Thank you. If I could have one or two minutes of my time because we showed up some time early on about the... Let's see. You've got how much time? I meant to have ten minutes and I just noticed we're now down to four. I think we'd better give that to your colleague. Thank you. Your erstwhile colleague. All right. We'll give you the full five instead of four. Thank you very much, Your Honor. Kelly Smith of the Police and Court. For Sprawl Death. Sprawl Death is an intervener. And I'm going to focus just on prudential standing. I think it's something that should be brought up. The court can take it up to his body at any time. And I think what we have here is a simple resolution to what is clearly an abuse of the Commerce Clause. And that's what this complaint is. It's an end run around the state courts. And this court, as well as the direction of the Supreme Court in dormant Commerce Clause cases, particularly with garbage, has gotten stricter and stricter on the scrutiny that's given to the allegations that are raised in any matter. The county of Kern case for this circuit on the Washoe case, Washoe County case, clearly requires something more than the kind of fig leaf allegations of interstate commerce that are brought here. And you have the evidence before you in the form of the state's amicus briefing and evidence provided that, in fact, garbage in particular is a local police power, health and safety concern. And here this vote is a vote of the people on the environmental aspects of that and that garbage does not travel. Although the industry has fought long and hard in courts all the way up to the Supreme Court to make it a article of interstate commerce, that's fine. But courts are realizing that really the abilities of local communities to take control of their garbage is a balancing that goes on here. And the complaint, as it's alleged, alleges nothing of existing interstate commerce. It doesn't. It says we're going to suffer financially. This is going to hurt us. That's because these companies all over the Bay Area have deals here and there for landfills. But that's not interstate commerce. That's not within the zone of interest that you're required to plead. If nothing else, if this case does go back, I would ask this court to direct the lower court, well, to sustain the dismissal with leave to amend, if nothing else, to pledge to plead specifically what interstate commerce is implicated within the zone of interest. Thank you. Now, whichever side you're on, we're going to give you three minutes. Good morning. May it please the Court. Jim Laughlin, Deputy County Counsel for Appalachia County, Solano. I don't have too much to add to this case. I just ask that you follow what the Sixth Circuit did in the Executive Arts case. As the Court has recognized, this case comes up on quite unusual facts. It followed an unusual procedural path to get here through both the state and federal court. The Executive Arts decision out of the Sixth Circuit is the only case we've been able to find with procedural background similar to this, where the state court action was brought by private parties seeking to get the government to enforce the local law when the government officially felt the law should not be enforced in the manner that private parties were seeking. The Executive Arts case seems to be directly on point here. The county is the entity who normally enforces local ordinances. Unquestionably, whenever we enforce a local ordinance, we do so under color of state law. We recognize that we ever go too far in enforcing the local ordinance. We're subject to exposure to 1983-1988 liability. That restrains us in our enforcement efforts. So we don't bring enforcement actions unless we really think both the facts and the law support that effort. Here, the interviewers in this case claim that the state court actions are brought under color of law to enforce Measure E, but I don't think they've really considered the full consequences. Are they saying that they're susceptible to 1983-1988 liability? It turns out their enforcement actions have gone too far here. The county is painfully aware of what could happen if we ever go too far, and so we exercise extreme caution in how we enforce our laws. So in our view, the state court actions here are not enforcement actions. They're not state-initiated enforcement proceedings. Younger does not apply. I'd urge you, again, to follow up what the Sixth Circuit did in executive arts. What did the Sixth Circuit do in executive arts? They said that younger abstention does not apply unless there has been a state enforcement action brought, and there is no enforcement action. If the superior court in the Mandamus action had issued the writ and directed Solano County to enforce Measure E and then this action was filed, would there be state enforcement action? What happened in executive arts, and it applies here, is the lower state court did issue such an order to the local officials to enforce the local ordinance. At that point, I suppose the local officials did have the option of either appealing that ruling or else following the ruling and enforcing. In that case, they chose to enforce rather than appeal. In our case, we've chosen to appeal. So as the appellant has stated, that stays the state court enforcement proceedings. There is no county enforcement against the landfill in this case. In fact, you have not been enforcing the measure for some time, correct? We enforced it, or we fully complied with the measure once it was enacted in 1984 up until about 1992 when the United States Supreme Court issued its fourth greatest share decision. Our county council looked at that and advised the board that the board should not enforce Measure E beyond that point because it looked like we would be subject to 1983 liability if we attempted to enforce a non-constitutional ordinance. So since 1992, we have not been enforcing Measure E. So what difference does it make to you whether this runs up the spine of the California state system or the federal system? The county's primary interest in this is getting a judicial declaration as to the constitutionality of Measure E. We'd like to get that issue resolved. Our preference is that the courts ultimately find it's unconstitutional, but our basic foundational goal is to get the constitution issue resolved. Do we know whether, as a matter of California law, the Superior Court had the authority to reform the measure? I do not believe they did so, and I don't believe they reformed it in a proper manner, even if they did have the authority to do so. We think there's a number of problems with the state litigation. That's the position you're taking in the state litigation, but the answer is, in Pullman terms, that the law is uncertain. We don't know whether there was authority to do that under California, and that is clearly a question of California state law, isn't it? The measure, we believe, is clear on its face. It doesn't matter what you believe. I think what Judge Hawkins said is, if the California Supreme Court takes a position maybe contrary to yours, that will be a definitive ruling as to what Measure E means. If it ever gets addressed on that issue, there are other procedural issues, such as standing, that may prevent the Court of Appeal from ever getting to the constitutional issue. And if it dismisses or reverses the trial court's ruling based on standing, then we're still uncertain of the constitutional issue. We believe the constitutional issue is presented as a pure single issue in these federal proceedings, and we're assured at the end of these federal proceedings we'll have an answer to the constitutional issue. But we don't know what will happen in the state court proceedings. Let's assume the Supreme Court adopts the ruling of the Superior Court. In your view, will that resolve the constitutional question, or will it be a constitutional question, whichever view the Supreme Court takes? One problem, if the Supreme Court, if the Court of Appeal system and the state court says that the measure is constitutional as reformed by the judge in this case, it still leaves open the issue of what did the voters do in 1984. Was that action constitutional or not? There's no court ruling overturning what the voters did in saying we should enforce the reform measure instead of the original measure. Are we stuck with two measures now? That's unclear. Well, I think you're, I don't know what, the Potrero Hills' lawyer says that there's a constitutional question under the Commerce Clause, whichever way the California courts interpret this measure. Do you agree or disagree with that? I agree with that, Your Honor. All right. I don't want to take too much of your time, or your time's over, but do you have a similar or different position on the Pullman abstention? I believe Pullman doesn't apply here. It may have at one time, but due to the passage of time, there was no England reservation. It's too late in the process to go through the Pullman analysis and to give the landfill operator a chance to make the England reservation a state court, and so the issue has become moot. Thank you, counsel. Thank you, Your Honor. We've only got a little extra time, thanks to your colleague who sat with the wrong side. Thank you, Your Honor. I want to turn quickly to a question that Judge Hawkins asked about a hypothetical if Solano County were enforcing Measure E. We would have a very different case, and it would probably be very difficult for the 23 haulers to proceed in federal court, but here we have a very unique case of a private mandamus action that's somehow trying to step into the shoes of what this court said is an absolute younger requirement, a state-initiated proceeding. We simply don't have that. And under Pullman, which a number of questions have been asked, the simple fact of a state question of some sort being embedded along with the federal questions does not allow for Pullman abstention. So do your clients want this court to determine the constitutionality of both Measure E as written and as reformed? The district court, yes. In the first instance, excuse me, Your Honor, it will decide Measure E as written because the effort that the trial court took to make Measure E constitutional is on appeal, so there's no final judgment from the Solano Superior Court. But you're asking for declaratory relief, aren't you? Yes. And if you got declaratory relief as to Measure E as written, and the state courts then said, well, that's not what it means, it means something different, where would we be? Well, we would have some collateral estoppel and issue preclusions to sort out at a later time. But for an analysis of a younger abstention ruling, we don't have to concern ourselves with what the dual court judgments might be and what their impact might be. However, whatever the measure means, either in state the way reformed or everywhere the way it's written, it's not being enforced against you now. Correct? That's correct. Your Honor, to the extent that question touches on standing. I'm not asking it for standing purposes. No, at this point it is not. What's the harm if we were in some fashion to instruct the district court to apply Pullman and wait for a resolution in state court? What's the harm? The harm there would be we would be deprived of our chosen federal form. Our instruction wouldn't kick you out, it would just tell the district court, stay the action for the moment and let's see what California does. So we know what measure is in front of us. What's the harm to your client in that circumstance? The harm is that we are forced to, likely under collateral estoppel principles, accept the state court ruling on the federal constitutional issue. We only filed a one-count complaint in federal court seeking a determination under the Dormant Commerce Clause. Now that issue has been fully taken up by the state court and consumes most of the state appellate court briefing. But we should be entitled to go back to federal court. Maybe the state court will issue a judgment first, maybe the federal court will, but we are entitled to be set back to the situation we were in in December 2009 and prosecuting that federal action to get a federal ruling. Let me ask you one question about the dates. I think I have a schedule here of the dates. Was your, and it may not be of any significance, but the current mandamus that's on appeal now, was that filed before or after your suit? It was filed before. We were served with the writs for mandamus as real parties in interest, two of the 23 plaintiffs, in June 2009, and we filed our federal action in September 2009. And the first ruling in the current mandamus action was in May of 2010? Correct. That was the oral argument and tentative, and then the decision was issued in May 2010, and as Mr. Perlmutter said, we had a final judgment agreed on by December. Okay. Thank you. If the point about the disputed issue of state law, I would just want to conclude with the point that a mere dispute over state law does not pull an abstention. Regarding the argument on prudential standing, we've got two out-of-state plaintiffs in this discussion regarding prudential standing. Thank you. Thank you all very much. The case is directed to be submitted. The court will stand in recess for the day. All rise.
judges: Reinhardt, Hawkins, Gould